MASON (JOHNSON v.). See Case No. 7,396.

———

## Case No. 9,239.

### MASON v. JONES.

[1 Hayw. & H. 323.] [1]

Circuit Court, District of Columbia. Nov. 27, 1847.

PRACTICE IN EQUITY—MOTION TO FILE ANSWER—DEFENDANT IN CONTEMPT.

1. It is of right and not favor for the defendant to file his answer before the decree nisi is made absolute.

2. A defendant in contempt in a cause against himself and others may file his answer in another cause against himself individually, though both suits relate to the same matter.

An injunction was granted in the case of Barnes vs. Jones and others, which was entered served on all the defendants [Thomas P. Jones, and Alexander Hunter, marshal of the District of Columbia]. The defendants did not appear to this suit nor answer the bill. On February 10, 1841, a writ was issued in the name of Jones against the complainant [John] Mason, Jr., on a note dated April 15, 1839, made by said Barnes to said Mason or order, endorsed by him and M. Clark, payable October 15 following. Mason was arrested, and special bail was put in. Mr. Marbury found his appearance entered; but having received no instructions, and never having seen Mason, he entered judgment at March term, 1842. A ca. sa. was issued, and Mason was taken in custody.

In January 13, 1843, Mason filed his bill. The bill and injunction of Barnes vs. Jones et al. was referred to as part of this bill. The prayer of the bill was that the judgment of March term might be opened, or relief granted here by perpetual injunction and cancellation of the said note. The injunction was returned served on Jones. He did not appear or answer. On June 24, 1845, a perpetual injunction was decreed nisi, which was served on July 1, and on October 24, 1845, before the decree became absolute, the defendant Jones' answer to the bill was brought into court and offered to be filed.

Objection being made by the complainant, the matter stood over and was heard at this term.

Henry May, for complainant.
Jos. H. Bradley, for defendants.

———

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[1] [Reported by John A. Hayward, Esq., and George C. Hazleton, Esq.]

May, for the complainant, objected to the reception of the answer, because Jones was in contempt by having violated the injunction granted in the Barnes Case against him and others by suing upon one of the notes. Har. Ch. 222, 263; Williamson v. Carnan, 1 Gill & J. 211, 213.

Bradley, contra, contended that it was the defendant's right to file his answer before decree nisi becomes absolute, and that the contempt, if there was any, was in another cause. 1 Smith, Ch. Prac. 61, note a; Alkroyd v. King, 8 Paige[2] [Akroyd v. Klug, 1 Ch. Sent. 39].

CRANCH, Chief Judge. The bill states that, in 1838, certain persons, among whom was the defendant, Thos. P. Jones, associated for the purpose, among other things, of procuring and getting cuttings of the morus multicaulis, and authorized John F. Callan to sell them, and he did, as their agent, sell Abraham Barnes a large number of cuttings, which cuttings the said J. F. Callan, for the said persons, warranted to vegetate and grow, if certain instructions were followed. That the said Barnes, relying on the said warranty, was induced to purchase of the said Callan, 125,000 cuttings, for which he gave his several promissory notes with the complainants and M. St. Clair Clarke as endorsers thereon, and that all the said proceedings were with the knowledge and assent of the said Thos. P. Jones and others. That the complainant does not recollect the amount of each note or the aggregate amount of them all, but will show the same to the court. That the complainant charges that there "was the most manifest fraud in the sale of the said cuttings, and that the same did not vegetate or grow, and there was a total failure of the consideration of the notes, notwithstanding the said Barnes did follow the instructions given, and did everything in his power to make the same vegetate and grow." "That the same was known to the said Callan and the said Thos. P. Jones and others." "And that the said sale was made fraudulently, and that the said notes were given without any consideration whatsoever, the one for which they were given having totally failed, as the complainant is informed and believes, and so charges." That the notes were given and taken for the benefit of said Thos. P. Jones and others. That, on the 19th June, 1839, the said Barnes obtained an injunction from this court to prevent the said Callan and the said Thos. P. Jones and others from passing the said notes or from suing upon the same, as will appear by reference to the proceedings in the case of the said Barnes against the said T. P. Jones and others in this court, which injunction was regularly served upon the said T. P. Jones. But the complainant charges that the said T. P. Jones, in defiance of the injunction, which was then and still is in force, has sued the complainants upon one of the notes so enjoined.

The complainant then charges that payment of the note had never been legally demanded—whereby the plaintiff was discharged. That, on the 10th of February, 1841, while the injunction in Barnes' Case, was in force, the said defendant Jones brought suit against this complainant (Mason) on one of the notes so enjoined in Barnes' Case. That, not being able to attend to the case in person, he applied to a friend to enter special bail for him and to employ counsel; and his special bail, through mistake, entered the appearance of Mr. Marbury, attorney-at-law, instead of Brent & Brent, who alone were acquainted with the facts of the case and of the defence, and to whom the complainant had spoken. That the complainant was ignorant that the appearance of Mr. Marbury had been entered as his counsel, until after he (Mr. Marbury) had confessed a judgment in the case at March term, 1842, and until the ca. sa. was served against him, this complainant. That the note upon which this judgment was founded was dated 15th of April, 1839, signed by Barnes, payable to the order of the complainant, on the 15th of October, 1839, and endorsed by the complainant. That the injunction in Barnes' Case was granted June 19th, 1839. That T. P. Jones, at the time of receiving the note, knew that the note was given for the cuttings, and that the consideration had totally failed. Upon this bill an injunction was issued on the 14th of January, 1843 (after the complainant, Mason, had been arrested on the ca. sa., but before his commitment in execution), to restrain the defendant "from proceeding further upon the judgment" at law, which had been rendered on the 4th of April, 1842. That on the 24th of June, 1845, the defendant T. P. Jones, having failed to appear and answer the bill within three months after the day of appearance and after the filing of the bill, it was taken pro confesso and a perpetual injunction decreed nisi, i. e., to be absolute unless cause to the contrary be shown at the term next succeeding "that to which the decree shall be returned executed." Before the decree became absolute, on the 24th of October, 1845, the defendant, T. P. Jones, by his counsel, moved for leave to file an answer.

This motion was resisted on the ground that the defendant was in contempt by having violated the injunction granted in Barnes' Case, June 19th, 1839, against this defendant and others, by bringing this action at law upon one of the notes included in that injunction, and that his answer in this case of Mason against Jones cannot be received while he is in contempt in the case of Barnes against Jones and others.

In support of the objection to the motion to file the defendant's answer, the counsel for the complainant cited Har. Ch. 222, but that

---

[2] [See note 3 on page 1038.]

authority only shows what acts will authorize an injunction and what will be a violation of the injunction, not that a party who is in contempt in one cause may not file his answer in another. The authority in Har. Ch. 263, only shows that, although the answer denies the whole equity of the bill, the injunction will not be dissolved until the defendant's contempts are cleared, meaning, no doubt, contempts committed in that cause.

The complainant's counsel also cited Williamson v. Carman, 1 Gill & J. 211, 213. But in that case the contempt was committed in that cause, and has no relation to the filing of the answer, which was filed May 13th, 1826. The only point in that case applicable to this is that the chancellor will not hear a motion to dissolve the injunction while the defendant is in arrest under an attachment for a contempt in violating the same injunction. But there are many cases in which a party who has committed a contempt even in the same cause may sustain a motion. Thus a plaintiff in contempt for non-payment of costs for an irregular motion can enforce an answer from the defendant (1 Smith, Ch. Prac. see note a); and it is only where a party in contempt applies for a favor that such an objection is available (Akroyd v. Klug, 2 Paige [3] [1 Ch. Sent. 39]).

Can a party be said to be in contempt unless he be attached for the contempt? for until attached or otherwise brought before the court non constat that he is guilty of the contempt, so as to prevent him from proceeding in his cause. In the present case the defendant did not apply to the court for a favor in offering to file his answer, for he had a right to file it at any time before the decree became absolute, and therefore the rule that a party in contempt cannot make a motion until he has cleared his contempt, is not applicable to this case. But the injunction which the defendant is charged with violating was not granted in the present cause, but in that of Barnes vs. Jones and others, and the defendant is not guilty of a contempt in this cause by being guilty of a contempt in another cause.

For these reasons I think the defendant has a right to file his answer, which was produced and offered to be filed before the decree nisi became absolute.

[For a hearing on motion to dissolve injunction, see Case No. 9,240.]

---

[3] These citations are incorrect. There is no case in any of Paige's Chancery Reports under the name of Alkroyd v. King or Akroyd v. Klug. In Johnson v. Pinney, 1 Paige, 646, the defendant applied for a commission to take testimony of a witness. The plaintiffs resisted the application, on the ground that the defendant was in contempt for not paying a bill of costs. The chancellor held that where a party is in contempt, the court will not grant an application in his favor which is not a matter of right. If he applies to the court for a favor, it will be granted, on condition that he purge his contempt by complying with the former order of the court.